UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDULLAH M., | |
| Petitioner, | No. 1:25-cv-01972-TLN-JDP |
| v. | **ORDER** |
| WARDEN OF THE GOLDEN STATE ANNEX, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Abdullah M.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO").[1] (ECF No. 1.) Respondents Warden of the Golden State Annex Detention Facility, Sergio Albarran, Kristi Noem, Todd M. Lyons, and Pamela Bondi (collectively, "Respondents") filed an opposition. (ECF No. 9.) For the reasons set forth below, Petitioner's Motion for a TRO is GRANTED and Respondents are ORDERED TO SHOW CAUSE why a preliminary injunction should not issue.

///

///

---

[1] On December 22, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Based on the substance of Petitioner's brief and the relief requested therein, the Court construed Petitioner's pleading as a motion for a temporary restraining order. (ECF No. 5.)

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native of Afghanistan who was admitted to the United States as a refugee on September 26, 1989, at the age of four. (ECF No. 9-1 at 1–2.) On July 9, 2008, Petitioner was placed in removal proceedings due to Petitioner's criminal history. (*Id.* at 2–3.) On December 21, 2010, Petitioner was ordered removed to Afghanistan. (*Id.* at 3.) On February 16, 2011, a travel document request was submitted to the Embassy of Afghanistan, who denied the request on March 30, 2011. (*Id.*) On May 2, 2011, Petitioner was released from the custody of Immigration and Customs Enforcement ("ICE") on an Order of Supervision. (*Id.*) On June 13, 2011, a second travel document request was submitted to the Consulate General of Afghanistan, who denied the request on May 17, 2012. (*Id.*) On June 2, 2025, ICE arrested Petitioner. (ECF No. 9.)

Petitioner is married and has two children, who are United States citizens. (ECF No. 9-1 at 3.) Petitioner has stated to ICE that he has a fear of persecution or torture should he be removed to his native country. (*Id.*)

On December 21, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) Based on the substance of Petitioner's brief and the relief requested therein, the Court construed Petitioner's pleading as a motion for a TRO. (ECF No. 5.)

### II. STANDARD OF LAW

A TRO and a preliminary injunction are both extraordinary remedies. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

For both a TRO and a preliminary injunction, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh the petitioner's showings on the *Winter* elements using a

sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a temporary restraining order even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in the petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

**III.  ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.  <u>Likelihood of Success on the Merits</u>

*i. Fifth Amendment Due Process*

Petitioner argues he is likely to succeed on his claims that his continued detention violates the Fifth Amendment Due Process Clause and 8 U.S.C. § 1231(a)(6) ("§ 1231(a)(6)") because Respondents cannot demonstrate his removal is reasonably foreseeable.[2] (ECF No. 1 at 12–13.) Specifically, Petitioner contends the Immigration and Nationality Act authorizes a period of six months to allow the United States to effectuate removal. (*Id.* (citing § 1236(a)(6)); *Zadvydas v. Davis*, 533 U.S. 678 (2001)).) Petitioner further contends once removal is no longer foreseeable, it is a violation of § 1231(a)(6) and due process to hold a noncitizen in detention. (*Id.* at 12–13.)

In opposition, Respondents state, in a conclusory fashion, that the record does not demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, and that Petitioner has not made a clear showing of a violation to justify a TRO. (ECF No. 9 at 3.)

---

[2] Petitioner contends 8 C.F.R § 241.13(i)(2) ("§ 241.13(i)(2)") similarly provides that immigration authorities may only redetain an individual who was released from custody only if there are changed circumstances which establish that removal is reasonably foreseeable. (*Id.* at 16–17.) However, § 241.13(i)(1) permits an alternate basis for revocation of release for violations of conditions. Additionally, even if revocation of release is warranted under either § 241.13(i)(1) or (2), the revocation procedures in § 241.13(i)(3) must be followed. Neither party engages with these additional provisions of § 241.13(i) nor provides facts sufficient to make findings, thus, the Court declines to address the likelihood of success of a violation of § 241.13(i) and instead finds relief warranted on Petitioner's remaining claims.

3

1    In *Zadvydas*, the United States Supreme Court considered prolonged immigration detention after a final order of removal. 533 U.S. 678 (2001). Although the Government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal. *Id.* at 701. "After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Respondents concede that Petitioner "has been in custody for more than six months" since his final order of removal. (ECF No. 9 at 3.) Thus, they have lost the benefit of the *Zadvydas* presumption.

Further, the Court finds there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. Afghanistan has twice denied travel documents for Petitioner. (ECF No. 9-1 at 3.) Petitioner argues that Afghanistan does not have a repatriation agreement with the United States. (ECF No. 1 at 20.) Finally, Petitioner argues that Afghanistan does not consider him a citizen at all because he was born in a refugee camp. (*Id.*) On this record, there is no reason to believe that Afghanistan has changed its mind from its two prior decisions and Respondents are significantly likely to remove Petitioner in the reasonably foreseeable future. Therefore, the burden shifts to Respondents to provide rebuttal evidence, but Respondents offer no such evidence. (*See generally* ECF No. 9.)

Without evidence of a legitimate basis to continue Petitioner's detention, Petitioner is likely to succeed on his claims.

### ii.    Third-Country Removal

Finally, Petitioner argues ICE's new policies and procedures related to third-country removal are unlawful and he may be subjected to such removal. (ECF No. 1 at 13–16.) Respondents do not address these arguments and do not provide assurances that they are not

1     seeking third-country removal for Petitioner. (*See* ECF No. 9.)

2           Third-country removals involve deportation to countries that are not identified in a final
3     removal order and to which the noncitizen has no connection. *See* 8 U.S.C. § 1231(b)(2)(E)(vii).
4     ICE's July 9, 2025 guidance on this issue provides that if the United States has received credible
5     diplomatic assurances from a target third country that the noncitizen will not be persecuted or
6     tortured, then they may be removed "*without the need for further procedures.*" *Vu*, 2025 WL
7     3114341, at *8 (quoting ICE July 9, 2025 third-party removal policy) (emphasis added). Where
8     diplomatic assurances are not secured, ICE will provide notice to the noncitizen, but removal
9     could occur within as little as six hours and ICE "will *not* affirmatively ask whether the
10    [noncitizen] is afraid of being removed to the country of removal." *Id.* If ICE follows this policy
11    for Petitioner's removal, he would have no meaningful opportunity to seek relief in any court
12    before he is removed to a third country. *See id.*

13          Numerous courts in this Circuit have held that ICE's third-country removal policy is
14    unconstitutional and this Court agrees with those well-reasoned decisions. *See, e.g.*, *Vu*, 2025
15    WL 3114341, at *9; *Scott*, 2025 WL 2419288, at *18–23; *Zakzouk v. Becerra*, No. 25-cv-06254-
16    KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-
17    1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). "The Fifth Amendment
18    guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267,
19    1270 (9th Cir. 2001). "Failing to notify individuals who are subject to deportation that they have
20    the right to apply for asylum in the United States and for withholding of deportation to the
21    country to which they will be deported violates the constitutional right to due process."
22    *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal
23    designations, last minute orders of removal to a country may violate due process if an immigrant
24    was not provided an opportunity to address his fear of persecution in that country." *Nguyen v.*
25    *Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting
26    *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016)). Thus, Petitioner is likely to succeed on the
27    merits of his third-country removal claim.

28

B.  Irreparable Harm

The Court finds Petitioner will suffer irreparable harm in the absence of a TRO.  Prior to his detention, Petitioner had been out of immigration custody for almost fifteen years, during which time Petitioner appears to have made meaningful connections with his community.  Absent relief, it appears that Petitioner would remain in custody until a travel document is issued by Afghanistan, if ever.  This violation of Petitioner's rights is sufficient to satisfy the irreparable harm requirement.  *Vu*, 2025 WL 3114341, at *9.

C.  Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds the balance of equities and public interest weighs in Petitioner's favor given that the Court has found that Petitioner has a strong likelihood of success on the merits and Respondent's lack of irreparable harm.  *Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The Government] cannot suffer harm from an injunction that merely ends an unlawful practice . . .").

Therefore, the Court GRANTS Petitioner's request for a TRO.  (ECF No. 1.)

**IV. CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's pleading (ECF No. 1), considered as a motion for a temporary restraining order, is GRANTED;

2. To return to the status quo, Respondents must IMMEDIATELY RELEASE Petitioner under the same conditions he was released previously.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  **Respondents must file a notice certifying compliance with this provision of the Court's Order by January 8, 2026**;

3. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining

1 Petitioner absent compliance with constitutional protections, including seven-
2 days' notice and a pre-deprivation hearing before a neutral fact-finder where
3 Respondents show: (a) material changed circumstances demonstrate a significant
4 likelihood of Petitioner's removal in the reasonably foreseeable future, or
5 (b) Respondents demonstrate by clear and convincing evidence before a neutral
6 decisionmaker that Petitioner poses a danger to the community or a flight risk.  At
7 any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondents are ENJOINED AND RESTRAINED from removing Petitioner to any country other than Afghanistan, unless they provide the following process:
   a. written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand;
   b. following the notice, Petitioner must be provided a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection under the Convention Against Torture prior to removal;
   c. if Petitioner is found to have demonstrated "reasonable fear" of removal to the designated country, Respondents must move to reopen Petitioner's immigration proceedings;
   d. if Petitioner is not found to have demonstrated a "reasonable fear" of removal to the country, Respondents must afford Petitioner a meaningful opportunity, and a minimum of fifteen days, to seek to reopen his immigration proceedings;

5. Respondents are ORDERED TO SHOW CAUSE why this Court should not issue a preliminary injunction continuing this Order.  Respondents shall file responsive papers by **January 13, 2026**.  Petitioner may file a reply, if any, by **January 20, 2026**.  **The parties shall indicate in their briefing whether they waive a hearing**.  Fed. R. Civ. P. 65(b)(3).  The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

7

6. Respondents are hereby notified of their right to apply to the Court for modification or dissolution of the TRO on two days' notice to Petitioner. Fed. R. Civ. P. 65(b)(4); and

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

IT IS SO ORDERED.

Date: January 7, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE